UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| MÓNICA POLEMENI,<br><br>       Plaintiff,<br><br>   - against -<br><br>THE UNITED STATES OF AMERICA; SCOTT BESSENT, in his official capacity as SECRETARY OF THE TREASURY OF THE UNITED STATES; SCOTT BESSENT, in his official capacity as COMMISIONER OF THE INTERNAL REVENUE SERVICE OF THE UNITED STATES; and Marco Rubio, in his official capacity as SECRETARY OF STATE OF THE UNITED STATES.<br><br>       Defendant. | Case No. _____<br><br>REVERSAL OF CERTIFICATION UNDER 26 U.S.C. § 7345(e); INJUNCTIVE RELIEF. |

## **COMPLAINT**

Plaintiff Mónica Polemeni Pérez ("Mrs. Polemeni" or "Plaintiff") files this Complaint against defendant the United States of America ("United States"), Scott Bessent in his official capacities as Secretary of the Treasury of the United States and Commissioner of the Internal Revenue Service of the United States, and Marco Rubio in his official capacity as Secretary of State of the United States, pursuant to 26 U.S.C. § 7345(e). She alleges and prays for relief as follows:

## **Introduction**

1.  This is a decertification action brought under Section 7345(e) of the Internal Revenue Code, 26 U.S.C. § 7345(e), which allows any individual who has been notified of a

seriously delinquent tax debt certification to petition for judicial review before the United States District Court without the need to exhaust administrative remedies before the Internal Revenue Service ("IRS").

2.     Mrs. Polemeni was notified of a "seriously delinquent" federal tax debt certification and was subsequently informed by the IRS that the U.S. Department of State had been notified of the certification. Since said notification to the U. S.  Department of State, her passport has been subject to denial, revocation or limitation at any time. Such action would bar her from traveling not only internationally but also domestically, as Mrs. Polemeni currently lacks a Real ID-compliant driver's license (*i.e.* the only alternative to a passport should she need to travel within the United States). As a result, any travel by Mrs. Polemeni outside of Puerto Rico is wholly dependent on the continued validity of her U.S. passport. This situation continues to affect Plaintiff even though the "seriously delinquent" debt already was fully resolved by the actual debtor, as acknowledged by the IRS itself. The debt in question belonged to Mrs. Polemeni's employer, Insigneo Securities, LLC ("Insigneo" or the "Company"), formerly known as Insigneo International Financial Services LLC.[1]  Not only did the IRS wrongfully assess Insigneo's debt against Mrs. Polemeni personally, to the point of placing a lien on her personal bank account, but it has failed to remove the debt and lien from her IRS record even after Insigneo fully resolved the matter with the IRS.

3.     While the debt assessment against Insigneo has been resolved, by the IRS' own admission, due to an internal clerical error, on July 14, 2025, Mrs. Polemeni's bank account was levied for the same amount as the purported tax debt. While the levy was removed after Insigneo contacted the IRS, on August 19, 2025, Mrs. Polemeni received a new CP508C notice indicating

---

[1] Insigneo International Financial Services LLC merged with Insigneo on December 2, 2024.

that she had been certified as a seriously delinquent tax debtor, that said certification had been transmitted to the U.S. Department of State and that the State Department could deny, revoke or limit Plaintiff's passport as a result thereof. Both Mrs. Polemeni and Insigneo contacted the IRS immediately, and the IRS confirmed that Insigneo's debt had been resolved but that another clerical error had resulted in a lien against Mrs. Polemeni not being removed for that same debt

4.      To date, an outstanding debt and lien remains on Mrs. Polemeni's IRS account, which debt (1) does not belong to her and (2) has been resolved by the actual debtor. As instructed by the IRS, Plaintiff filed a Taxpayer Advocacy Form to attempt to resolve the issue. However, the IRS's failure to correct its own error has harmed Mrs. Polemeni, will continue to do so, and is likely to cause her irreparable harm in the manner described below.

5.      Accordingly, Mrs. Polemeni hereby requests this Court to enter an order directing the IRS to immediately reverse the certification to the Secretary of the Treasury and the Commissioner of Internal Revenue because the debt was erroneous as to Plaintiff and because the authorities have thus failed to reverse it in a timely manner, and to enjoin the Secretary of State from limiting her right to travel because such certification was erroneous and/or should be reversed.

### Parties, Jurisdiction and Venue

6.      Plaintiff Mónica Polemeni Pérez is a citizen of the United States and resident of Urb. Apolo II, Calle Hércules #2083, Guaynabo, Puerto Rico.

7.      Defendant United States is the proper party to this action under 26 U.S.C. § 7345(e) and may be served with process by certified mail, return receipt requested, addressed to the Attorney General of the United States at Washington, D.C. and to the civil-process clerk at

the United States Attorney's office for the District of Puerto Rico pursuant to Federal Rule of Civil Procedure Rule 4(i).

8.      Defendant Scott Bessent, Secretary of the Treasury, is sued in his official capacity and only as an officer of the United States, and may be served with process by certified mail, return receipt requested, to the Attorney General of the United States at Washington, D.C. and to the civil-process clerk at the United States Attorney's office for the District of Puerto Rico pursuant to Federal Rule of Civil Procedure Rule 4(i). Secretary Bessent is included in his official capacity inasmuch as the remedy herein requested concerns the issuance of an order directed to the Secretary of the Treasury.

9.      Defendant Scott Bessent, Commissioner of Internal Revenue, is sued in his official capacity and only as an officer of the United States, and may be served with process by certified mail, return receipt requested, to the Attorney General of the United States at Washington, D.C. and to the civil-process clerk at the United States Attorney's office for the District of Puerto Rico pursuant to Federal Rule of Civil Procedure Rule 4(i). Secretary Bessent is included in his official capacity inasmuch as the remedy herein requested concerns the issuance of an order directed to the Commissioner of Internal Revenue.

10.      Defendant Marco Rubio, Secretary of State, is sued in his official capacity and only as an officer of the United States, and may be served with process by certified mail, return receipt requested, to the Attorney General of the United States at Washington, D.C. and to the civil-process clerk at the United States Attorney's office for the District of Puerto Rico pursuant to Federal Rule of Civil Procedure Rule 4(i). Secretary Rubio is included in his official capacity inasmuch as the remedy herein requested concerns the issuance of an order directed at the Secretary of State.

11.     This Court has jurisdiction, and venue is proper, pursuant to 26 U.S.C. § 7345(e)(1).

**Facts**

### A. Insigneo's Tax Debt for Q3 2022 and its Satisfaction

12.     Around December 2024, Insigneo, Mrs. Polemeni's employer, received a notice from the IRS indicating a certain tax return due, corresponding to the Company's Q3 2022 payroll tax filing. *See* Exhibit 1, Declaration of Miguel Ángel Rivera Cruz Under Penalty of Perjury ("Declaration of Miguel Rivera"), ¶ 4.

13.     Around March 2025, after months of investigating the notice and the amount supposedly due, Insigneo discovered that it had erroneously overstated its Q3 2022 tax filing and that it did not owe the amount supposedly due. *Id.,* ¶ 5.

14.     On May 27, 2025, to address the error that led to the tax debt notice, Insigneo filed an Amended Form 941-X with its assigned revenue officer, Estefanía Díaz ("Ms. Díaz"), ID #1005028318. *Id.,* ¶ 6.

15.     On July 15, 2025, Insigneo representatives spoke with another revenue officer identified as Ms. White, ID# 10003528112, who indicated that the Amended Return was processed and the balance due would be removed from Insigneo's IRS account. However, she explained that the amended return had to be processed by a second department before being posted to the account. *Id.,* ¶ 7.

16.     On August 19, 2025, as a result of the Amended Return, Insigneo received a refund check, as well as a lien release form dated July 24, 2025. *Id.,* ¶ 8. Insigneo was instructed by its revenue officer, Ms. Díaz, that the lien release had put an end to the Q3 2022 tax debt situation and fully resolved any outstanding debt previously notified by the IRS. *Id.*

**B.** **The IRS's Erroneous Tax Debt Certification and Collection Process Against Mrs. Polemeni**

17.     While Insigneo was resolving the situation surrounding its tax notification for Q3 2022 by filing the Amended Return, Mrs. Polemeni —who is not an administrator of Insigneo, but rather the Operations Manager— was sent a communication from the IRS. The letter was addressed to her in her personal capacity. *See* Exhibit 2, Declaration of Mónica Polemeni Pérez Under Penalty of Perjury ("Declaration of Mónica Polemeni"), ¶¶ 4 - 5.

18.     The communication identified Mrs. Polemeni as personally liable for the Company's alleged tax debt for Q3 2022 and proposed to "assess a Trust Fund Recovery Penalty against Plaintiff as a personal liability because the IRS had not received full payment of the federal employment or excise tax liability due from [Insigneo]". *See* Exhibit A of Exhibit 2*,* Declaration of Mónica Polemeni; Exhibit 2, at ¶ 6. It further instructed Plaintiff to "collect, account for, and pay withheld trust fund taxes for [Insigneo]". *Id.*

19.     Although the communication was dated December 6, 2024, Mrs. Polemeni actually received it months later because the IRS mailed it to a physical address where Plaintiff does not reside or work: Parque Real, 203 Juan Borbon, Guaynabo, PR 00969. *Id.,* ¶ 5.

20.     Upon actual receipt of the communication, Mrs. Polemeni immediately contacted Miguel Ángel Rivera Cruz ("Mr. Rivera"), Insigneo's Chief Financial Officer/Principal Financial Officer, who informed her that Insigneo had already resolved the issue regarding the tax debt identified in the IRS's communication to her. *Id.,* ¶ 7. Insigneo's representatives had been told by the IRS revenue officer that, once the Amended Return was filed and the Company cleared of the debt, Plaintiff's individual debt assessment would be resolved. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 9.

21.     On May 15, 2025, the IRS sent Mrs. Polemeni a *Final Notice, Notice of Intent to Levy and Notice of Your Rights to a Hearing Please Respond Immediately*. This communication, like the other before it, was also sent to the same address as before; as a result, Plaintiff did not receive it until July 2025. *See* Exhibit 2, Declaration of Mónica Polemeni, ¶ 8.[2]

22.     On May 27, 2025, around the time when Insigneo was filing the Amended Return, the IRS sent Mrs. Polemeni a *Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320*. This communication was sent to the same address as before; hence, Plaintiff did not actually receive it until July 2025. *See* Exhibit 2, Declaration of Mónica Polemeni, ¶ 9.

23.     Contrary to the IRS's prior representations, this communication specifically stated that the IRS had "filed a Notice of Federal Tax Lien" against Mrs. Polemeni on May 28, 2025, for the amount supposedly owed at the time: $66,199.03. *Id.,* ¶ 10.

24.     On July 7, 2025, over one month after Insigneo filed the Amended Return, the IRS sent Mrs. Polemeni three *Taxpayer's Copy of Notice of Levy* to the same incorrect address. The three communications imposed a lien on any funds Plaintiff had at the time in her bank accounts, to satisfy the $66,199.03 debt. *Id.*, ¶ 11.

25.     Mrs. Polemeni learned of the lien on July 14, 2025, when one of her children attempted to make a transaction using her Banco Popular bank account and the payment was denied. She communicated with the bank and was notified that a lien had been placed on her bank accounts at Banco Popular by the IRS and that the IRS had withdrawn the available balance from the accounts. *Id.*, ¶ 12. Again, this was contrary to the IRS revenue officer's

---

[2] Included in that letter to Plaintiff was Form 12153 (Request for a Collection Due Process or Equivalent Hearing). Plaintiff has not submitted said Form because she would be filing it *after* a levy has already been imposed on her account and after the 30-day window to file such a form had passed. As a result, her only remedy would be an "equivalent hearing", which per the form's own language does not prohibit levies or suspend the 10-year period the IRS has for collecting taxes. After due inquiry, Plaintiff also understands that said filing would not stay any actions by the U.S. Department of State with respect to her passport. *See* Exhibit B of Exhibit 2, Declaration of Mónica Polemeni, at ¶ 8.

representations, as Insigneo was told that no collection efforts would occur pending the processing of the Amended Return. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 9.

26.     Immediately thereafter, Insigneo and Mrs. Polemeni contacted the revenue officer again and she was able to remove the lien and the funds were transferred back to Mrs. Polemeni's bank account by July 16, 2025. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 10; Exhibit 2, Declaration of Mónica Polemeni, ¶ 13.

27.     At that point, the revenue officer, Ms. Díaz, was aware of the levy communications and indicated that these were procedural notices that should not be cause for alarm given the pending status of the Amended Return which Insigneo had filed earlier. However, after Mrs. Polemeni informed that the lien was in effect and the assets were removed from her account, Ms. Díaz immediately acknowledged the disconnect between IRS departments and filed a request to correct the issue. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 11; Exhibit 2, Declaration of Mónica Polemeni, ¶ 14.

28.     Other than stating that the selection process was random, Ms. Díaz had no explanation as to why Insigneo's supposed debt was assessed against Mrs. Polemeni personally. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 12; Exhibit 2, Declaration of Mónica Polemeni, ¶ 15.

*29.*     On July 18, 2025, Insigneo's representatives submitted a Taxpayer Advocacy Service request (FORM 911) in an attempt to expedite the resolution of the erroneous tax assessment against Plaintiff on IRS's records. The following week, the IRS released the lien that had been issued against Insigneo.  However, to date, it has not resolved the erroneous assessment made against Plaintiff.  *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 13; Exhibit 2, Declaration of Mónica Polemeni, ¶ 16.

C.  **The IRS's "Seriously Delinquent" Federal Tax Debt Certification Against Mrs.
Polemeni and the Notification of Passport and Travel Limitations**

30.    On August 19, 2025, the same day that Insigneo received the refund check from
the IRS, Mrs. Polemeni received a new notice indicating a seriously delinquent federal tax debt
certification (the "CP508C Notice"). *See* Exhibit 2, Declaration of Mónica Polemeni, ¶ 17. The
CP508C Notice had a date of August 4, 2025, but the IRS again sent it to the incorrect address
used before, resulting in Plaintiff not receiving it until weeks later. *Id.*

31.    The CP508C Notice states that Mrs. Polemeni supposedly is liable for a tax debt
in the amount of $68,517.96 and that said amount should be paid by September 3, 2025. It
further states that the U.S. Department of State had been notified of Plaintiff's alleged tax
delinquency, which could result in limitations on her right to travel. *Id.,* ¶ 18.

32.    That same day, Insigneo's representatives called the IRS practitioner hotline and
spoke with another Revenue Officer, Ms. Hernández, ID #1003435927, who stated that Mrs.
Polemeni was subject to a lien (but not a levy), and confirmed that the debt assessment against
Insigneo had been resolved, but that due to another clerical error, the lien against Plaintiff had
not been removed. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 14.

33.    This was again contrary to what was informed by revenue officer Ms. Díaz.
Specifically, on August 21, 2025, Insigneo's representatives called Ms. Díaz again and inquired
as to why Mrs. Polemeni had received the CP508C Notice. Ms. Díaz indicated that the individual
assessment issue would be automatically resolved when the Insigneo's debt issue was resolved.
*Id.,* ¶ 15.

34.    On August 26, 2025, Insigneo's representatives met in person with Ms. Díaz to
try one more time to resolve the situation related to the CP508C Notice and Mrs. Polemeni's

alleged debt and limitations to her right to travel. Insigneo's representatives were informed or recommended that:

a.  The IRS debt case file against Insigneo has been officially closed/resolved;

b.  Mrs. Polemeni's status remains unchanged in the system, but all necessary internal requests have been submitted;

c.  Although Mrs. Polemeni may contact the IRS using the number on the notice, those representatives do not have access to the internal case history, which may lead to confusion;

d.  Insigneo should follow up on the IRS Taxpayer Advocate Service and Form 911 to try to expedite updates on Mrs. Polemeni's records or place a hold on enforcement of actions while updates are pending.

*Id.,* ¶ 16.

35.    As recently as September 2, 2025, Mrs. Polemeni was informed by the IRS that starting on September 3, 2025, her bank accounts and properties could be the subject of a new round of levying mechanisms by the IRS, to the extent that her account still appears to have a lien for Insigneo's purported and satisfied debt. That same representative told Mrs. Polemeni that she needed to file federal tax returns for 2022, 2023 and 2024 before October 2, 2025, even though she is not required to file deferral tax returns. *See* Exhibit 2, Declaration of Mónica Polemeni, ¶ 19.

36.    To date, on information and belief, Mrs. Polemeni has no clarity on whether the IRS lien has been reversed, or the scope of Plaintiff's travel limitations or the expected timetable for such limitations to be lifted and the alleged personal debt resolved. *See* Exhibit 1, Declaration of Miguel Rivera, ¶ 17; Exhibit 2, Declaration of Mónica Polemeni, ¶ 20.

**D. <u>The Financial and Travel Limitations Stemming from the CP508C Notice has and will Continue to Cause Emotional and Irreparable Harm to Mrs. Polemeni</u>**

37.    Mrs. Polemeni has suffered and continues to suffer emotional distress by the financial uncertainty and effects caused by the various collection efforts and erroneous certification issued by the IRS against her, which should have been reverted by now.

38.    Selecting Mrs. Polemeni as personally liable for a debt she is not accountable for has also caused her emotional distress, and to the extent that no reason has been given for such selection Plaintiff continues to suffer emotional harm.

39.    Of additional importance, Mrs. Polemeni is distressed and would suffer additional irreparable harm because of the passport limitations presumably imposed upon her because of the CP508C Notice and the uncertainty related to her traveling rights that this has caused. *See* Exhibit 2, Declaration of Mónica Polemeni, ¶ 24.

40.    For example, Mrs. Polemeni has a daughter traveling to Europe the following week and in case of any emergency, she may need to travel outside of the United States. Any travel or passport limitations imposed because of the CP508C Notice would cause her irreparable harm and prevent her from visiting her daughter in case of an emergency. *Id.,* ¶ 25.

41.    Mrs. Polemeni also has a sister in Florida who has a young daughter, serves in the U.S. Coast Guard and in the past has required her in-person assistance whenever she is called for service. This usually requires Mrs. Polemeni to travel to Florida *impromptu* and on short notice (*i.e.*, 3-4 days' notice) to take care of her niece. Because of the CP508C Notice, Plaintiff has a real and valid concern that she may not be able to provide such assistance, more so considering that she is the only person in her family who her sister calls to care for her niece when those situations arise. *Id.* ¶ 26.

42.    Mrs. Polemeni also has a long-planned trip to the U.S. mainland later this year with family members but, because of the CP508C Notice and the travel limitations stemming therefrom, she has a real and valid concern that such plans are to be limited or even prohibited by the corresponding authorities. *Id., ¶ 27.* Likewise, Mrs. Polemeni has desisted from making other travel plans that she was considering at the time she received the CP508C Notice. *Id.*

43.    Mrs. Polemeni's credit and financial status also is at risk due to the collection efforts and lien registered against her, as well as her status in the IRS as a seriously delinquent debtor. In fact, to the extent that the debt certification and outstanding balance still appear in Mrs. Polemeni's IRS's records, Mrs. Polemeni has been given legal instructions to limit the transfers done in her bank accounts as much as possible, as that could give rise to potential criminal investigations with the IRS and other relevant authorities. *Id., ¶ 28.*

44.    Further, because of the CP508C Notice alert on travel restrictions and Passport revocation, Mrs. Polemeni looked for legal advice on the matter to see if she could still fly abroad and/or travel interstate. She was informed by counsel (not the undersigned counsel) that even the possibility of obtaining a Real ID (which she currently does not have) for purposes of interstate travel was limited. She was further advised that because her passport could be revoked, she should reconsider the short-term possibility of traveling. *Id., ¶ 29.*

## FIRST CLAIM FOR RELIEF

### The "seriously delinquent tax debt" certification is erroneous

45.    Mrs. Polemeni incorporates all the allegations contained in the previous paragraphs, as though fully set forth herein.

46.    Section 7345(a) of the Internal Revenue Code, 26 U.S.C. § 7345(a), provides that, if the Secretary of the Treasury receives certification by the Commissioner of Internal Revenue

that an individual has a seriously delinquent tax debt, the Secretary of the Treasury shall transmit such certification to the Secretary of State for action with respect to denial, revocation, or limitation of a passport. *See* 26 U.S.C. § 7345(a).

47.     Section 7345 defines "seriously delinquent tax debt" as an "an unpaid, legally enforceable Federal tax liability of an individual" which: (a) has been assessed, (b) is greater than $50,000, and (c) with respect to which (i) a notice of lien has been filed pursuant to section 6323 and administrative rights under section 6320 regarding such filing have been exhausted or have lapsed, or (ii) a levy is made pursuant to section 6331. *Id.* § 7345(b)(1).

48.     Critically, Section 7345(c)(1) states that, in the case of an individual with respect to whom the Commissioner of Internal Revenue makes a certification under subsection (a),  the Commissioner of Internal Revenue shall notify the Secretary of the Treasury (and who will in turn notify the Secretary of State) if said certification "is found to be erroneous or if the debt with respect to such certification is fully satisfied or ceases to be a seriously delinquent tax debt by reason of subsection (b)(2)." *Id.* § 7345(c)(1).

49.     Moreover, "[i]n the case of a certification found to be erroneous, such notification shall be made as soon as practicable after such finding." *Id.* § 7345(c)(2)(D).

50.     Under Section 7345(e), an individual who has been duly notified of any certification under section 7345(a) may bring a civil action against the United States in a district court of the United States, or against the Commissioner of Internal Revenue in the Tax Court, to determine whether the certification was erroneous or whether the Commissioner of Internal Revenue has failed to reverse it. *See Id.* § 7345(e)(1). If the court finds that such certification was erroneous, it "may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous." *Id.* § 7345(e)(2).

51.     Judicial review of the certification of Mrs. Polemeni as having a seriously delinquent tax debt is warranted because (1) the purported debt did not belong to Plaintiff but rather to her employer and (2) the debt has been removed from Insigneo's IRS record.

52.     Given the fact that the debt in question was already removed from Insigneo's record, any certification stating that Mrs. Polemeni has a seriously delinquent tax debt is undoubtedly erroneous. *See* Rowen v. Commissioner of Internal Revenue, 156 T.C. 101, 111 (U.S. Tax Ct. 2021) (noting that "[i]n general, an action is 'erroneous' if it is '[i]ncorrect' or "inconsistent with the law or the facts.") (*quoting* Black's Law Dictionary 659 (10th ed. 2014) and *citing* Merriam-Webster's Collegiate Dictionary 425 (11th ed. 2014) (defining "erroneous" as "containing or characterized by error: MISTAKEN")); *see also* Kasper v. Commissioner, 150 T.C. at 23 (examining if an agency's decision was "based on an erroneous view of the law or a clearly erroneous assessment of the facts" (*quoting* Fargo v. Commissioner, 447 F.3d 706, 709 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13)).

53.     As a result, this Court should find that the certification of Mrs. Polemeni as an individual with a seriously delinquent tax debt is erroneous and cannot be considered a debt based on which Plaintiff's passport may be denied, revoked, or limited under Section 7345.

54.     Given the above and pursuant to § 7345(e), Mrs. Polemeni is entitled to an Order from this District Court directing the Secretary of the Treasury to notify the Secretary of State that such certification was erroneous.

## SECOND CLAIM FOR RELIEF

### Judicial Review of the certification is warranted due to the Commissioner's failure to reverse the certification

55.     Mrs. Polemeni incorporates all the allegations contained in the previous paragraphs, as though fully set forth herein.

56.    Section 7345(e) authorizes an individual who has been duly notified of a certification that they have a seriously delinquent tax debt to bring a civil action against the United States to determine whether the Commissioner of Internal Revenue has failed to reverse the certification in question. *Id.* § 7345(e)(1).

57.    Judicial review of the certification of Mrs. Polemeni as having a seriously delinquent tax debt is warranted because the Commissioner of  Internal Revenue, knowing that the debt in question (1) does not belong to Plaintiff and (2) had been removed from the actual debtor's (Insigneo's) IRS record, has failed to reverse the certification.

58.    Because to date the Commissioner of Internal Revenue  has failed to reverse the certification despite multiple extrajudicial efforts to that effect, Mrs. Polemeni is entitled to an Order from this District Court directing that the certification be reversed by the Secretary of the Treasury and the Commissioner of Internal Revenue and directing the Secretary of State not to restrict, revoke or limit Mrs. Polemeni's passport. *Id.* § 7345(e).

## THIRD CLAIM FOR RELIEF

### Request for Preliminary Injunction

59.    Mrs. Polemeni incorporates all the allegations contained in the previous paragraphs, as though fully set forth herein.

60.    Defendants are currently restricting or limiting Mrs. Polemeni's use of her passport as evinced by the CP508C Notice sent to her. This limitation upon the use of her passport was placed after the IRS erroneously assessed against her a tax debt that belonged to her employer and was already removed from the employer's IRS record. The IRS has also warned Mrs. Polemeni that additional levying mechanisms will be enforced against her finances starting on September 4, 2025, if the lien keeps registered on her account.

61.    Mrs. Polemeni hereby requests the Court enter a preliminary injunction, pursuant to Fed. R. Civ. P. 65, and its inherent powers to prevent further irreparable damage caused by Defendants' violations of Section 7345, which requires that Commissioner of Internal Revenue notify the Secretary of the Treasury (and who will in turn notify the Secretary of State) if the seriously delinquent tax debt certification imposed upon Plaintiff "is found to be erroneous or if the debt with respect to such certification is fully satisfied or ceases to be a seriously delinquent tax debt by reason of subsection (b)(2)." *Id.* § 7345(c)(1).

62.    The Court of Appeals for the First Circuit has held that a plaintiff is entitled to a preliminary injunction upon satisfying four elements: (1) the probability of the movant's success on the merits of his or her claim(s); (2) the prospect of irreparable harm absent the injunction; (3) the balance of the relevant equities (focusing upon the hardship to the movant if an injunction does not issue versus the hardship to the nonmovant if it does), and (4) the effect of the court's action on the public interest. *See* Santiago v. Municipality of Utuado, 114 F.4th 25, 34–35 (1st Cir. 2024) (*quoting* Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003). Here, Mrs. Polemeni clearly meets all four elements.

63.    First, this Complaint has a "substantial likelihood of success on the merits" since, by the IRS's own admission and based on the documentation herein provided, the debt being attributed to Mrs. Polemeni and which has allegedly made her an individual with a "seriously delinquent tax debt" does not belong to her and has since been satisfied in full by the rightful debtor, Insigneo.

64.    Second, Mrs. Polemeni has suffered and continues to suffer irreparable harm due to Defendants' acts and violations of federal law because Defendants' actions have allowed Plaintiff's passport use to be restricted even when the debt in question has been fully satisfied.

The longer the IRS waits to reverse Plaintiff's certification stating that she is an alleged person with a tax debt, which is false, the longer her passport use will be restricted which will severely limit her ability to travel for emergency purposes if needed and to visit her family outside of Puerto Rico, and other related trips.

65.    Third, Mrs. Polemeni will undoubtedly suffer a hardship if an injunction does not issue in contrast with the hardship to the nonmovant if it does. This given that Plaintiff is being penalized for a debt which does not belong to her. While she has attempted to resolve this issue directly with the IRS as amicably as possible, these attempts have been to no avail. To the contrary, the non-movants will suffer no hardship considering the debt at issue has been fully satisfied.

66.    Fourth, Mrs. Polemeni will continue to suffer irreparable financial hardship inasmuch as she has been informed that her bank account may already be subject to further restrictions because the lien and purported debt still appears on her account; reason for which an order to the IRS to suspend forthwith any action with respect to restricting the use of Mrs. Polemeni's financial resources and bank accounts is necessary.

67.    Fifth, there can be no doubt that the reversal of an illegal and improper certification upon an individual who is not a debtor – the crux of Plaintiff's claims in the Complaint - is a matter of public interest.

68.    Contemporaneously with the filing of this Complaint, Mrs. Polemeni moves for a preliminary injunction seeking to stay any adverse actions by the U.S. Department of State with respect to her passport as well as any liens, levies or other actions with respect to her bank accounts or other assets. She hopes that her name is once and for all cleared of any debt which does not belong to her, something that has and could continue to affect her financial credit and

17

status (to the extent that she cannot even make substantial transactions from her bank account for fear of being criminally flagged). This has also affected her emotional stability continuously since the levies were issued.

69.     In light of the above, Defendants should be instructed to cease their illegal action and the Secretary of the IRS should be ordered to notify the Secretary of State that such certification stating that Mrs. Polemeni was an individual with a delinquent tax debt was erroneous and that it shall be reversed immediately. And of particular relevance to the preliminary injunction, Plaintiff should be allowed to make use of her passport for travel purposes without further restrictions and her bank accounts without fear of being levied again. Finally, considering that an award of monetary damages cannot fully and adequately compensate Plaintiff for this immediate harm, Plaintiff is without an adequate remedy at law.

70.     Lastly, Mrs. Polemeni is aware that pursuant to the Anti-Injunction Act, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). However, Mrs. Polemeni is not seeking to restrain the collection, the assessment or question its validity or the validity of the debt in itself. Instead, she is alleging that the debt assessed against her and the subsequent certification imposed upon her were erroneous. In fact, the IRS has admitted that the debt belonged to her employer and that it was satisfied in full around the same time that the levies were placed on Mrs. Polemeni.[3]

---

[3] If this Honorable Court were to find that Plaintiff is attempting to restrain the assessment or collection of any tax, this Court should still find that an equitable exception applies to Plaintiff's preliminary injunction request. To wit, the Anti-Injunction Act allows a plaintiff to file an action to restrain the collection of taxes if they show that **"under no circumstances could the Government ultimately prevail,"** and if "equity jurisdiction otherwise exists." Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962) (emphasis added). This is such a case given that the IRS, and by extension the U.S. Department of State, have imposed an assessment on Plaintiff which in no way shape or form belongs to her and under no circumstances can the Government show the opposite is true.

WHEREFORE, Mrs. Polemeni demands the following:

i. An Order from this District Court directing that the Secretary of the Treasury notify the Secretary of State that the seriously delinquent debt certification against Mrs. Polemeni was erroneous.

ii. An Order from this District Court directing that the seriously delinquent debt certification against Mrs. Polemeni be reversed by the Secretary of the Treasury and the Commissioner of Internal Revenue and directing the Secretary of State and IRS not revoke, restrict or limit Plaintiff's passport or her use of her bank accounts or other assets.

iii. A Preliminary Injunctive Order directing the Secretary of State to suspend forthwith any action with respect to denial, revocation or limitation of Mrs. Polemeni's passport, as well as ordering the IRS to suspend forthwith any action with respect to levying or otherwise restricting the use of Mrs. Polemeni's bank accounts and other assets pending entry of a final and unappealable judgment in this case.

iv. An Order awarding Mrs. Polemeni attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, 42 U.S.C. § 1988, and/or any other applicable statute or authority.

v. Awarding Mrs. Polemeni such other and further relief as the Court deems just and proper.

Dated: September 5, 2025

MCCONNELL VALDÉS LLC
*Attorneys for Mónica Polemeni Pérez*
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
P.O Box 364225
San Juan, PR 00936-4225
http://www.mcvpr.com
Tel. (787) 759-9292
 Fax. (787) 759-8282

By:  */s/Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR No. 211512
rcq@mcvp.com

*s/Juan G. Álvarez Valentín*
Juan G. Álvarez Valentín
USDC-PR No. 308107
jga@mcvpr.com

*s/Victoria Rivera Lloréns*
Victoria Rivera Lloréns
USDC-PR No. 307808
vrll@mcvpr.com